PIGGLY-WIGGLY DELAWARE, INC., complainant,

*v.*

ELWOOD S. BARTLETT, defendant.

[Submitted September 16th, 1924. Determined September 22d, 1924. Filed October 1st, 1924.]

**Corporations—Alleged Fraudulent Issue of Stock to Organizers —Alleged Fraudulent Conversion of Corporate Funds by Officers—Final Hearing Awaited to Determine Charges.**

On bill, &c. On motion.

*Messrs. Cole & Cole,* for the complainant.

*Messrs. Bourgeois & Coulomb,* for the defendant.

INGERSOLL, V. C.

The complainant is a corporation, incorporated in 1922 under the laws of the State of Delaware, with an authorized stock of seven thousand five hundred shares of preferred stock of the par value of $10, and fifteen thousand shares of common stock without nominal or par value.

The bill sets forth that the defendant, Elwood S. Bartlett, a citizen and resident of Atlantic City, this state, conceived a fraudulent plan to incorporate complainant company with a view of controlling and manipulating its affairs for his own personal gain and profit, at the sacrifice of the company, and that he was aided in said fraudulent plan by one James G. Hostutler and one Daniel H. Weissman, who were cognizant of said unlawful purpose.

That the defendant and Hostutler and Weissman subscribed (in the aggregate) to ten shares of the common stock, and that the said company was incorporated—they being the only incorporators. That on or about the 23d day of

February, 1922, the defendant and said Hostutler entered into an agreement with the Piggly-Wiggly corporation, also a corporation of the State of Delaware, by virtue of which they agreed to open, equip and operate a certain number of stores using the Piggly-Wiggly system (the patent for which being owned by said corporation) in certain geographical territory, and to pay therefor a prescribed percentage of the gross sales of said stores so owned and operated.

That on or about March 4th, 1922, the three incorpora tors met, as the first meeting of the incorporators, adopted by-laws, and the defendant and Hostutler offered to sell and assign to complainant their interest in the said agreement, and that the three incorporators passed a resolution approving the said offer, and recommending to the board of directors the acceptance of said offer and the issue of the entire common stock to the said defendant and the said Hostutler.

That Bartlett, Hostutler and Weissman, as stockholders, elected themselves directors, and, as directors, elected the defendant president and treasurer, Hostutler vice-president, and Weissman secretary of the company.

That, as directors, the three adopted a resolution agreeing to purchase the said agreement before mentioned, and authorizing the president and treasurer (the defendant) to issue the fifteen thousand shares of stock to the defendant and Hostutler.

The assignment made by Bartlett and Hostutler to the complainant was dated March 10th, 1922, and expressed a consideration of "one dollar and other valuable consideration."

That on March 20th, 1922, the defendant and said Hostutler and Weissman (as directors and officers of the complainant) abrogated the assignment aforesaid by entering into a contract in the name of complainant with the Piggly-Wiggly corporation.

That the defendant, Hostutler and Weissman, being officers and directors of the complainant company, "offered in the

name of the complainant company, and in its name took subscriptions for a large number of the shares of the common stock of the complainant company and of *its preferred* stock," and that they represented "that the said common stock was the possession of the complainant company, and that all moneys derived from such sales would be the moneys of complainant company and available for its business and operation."

*Exhibit "G"* evidences that the subscription form was in the name of the complainant company.

"There are outstanding  *  *  *  eight thousand eight hundred shares of its common stock, all of which were issued to the holders as original subscribers direct from the company.

"That the exact amount of money received from the sale of the said shares of common stock is unknown to complainant company," but *it* avers it "amounted to upward of $100,000.

"That all moneys paid for common stock of complainant company as aforesaid were made payable to and were paid unto the treasury of complainant company.

"That between the organization of complainant company and the termination of defendant's official connection with complainant company  *  *  *, the said defendant then being both president and treasurer of complainant company, unlawfully and fraudulently withdrew large sums of money from the treasury of complainant company, and unlawfully and fraudulently diverted the moneys of complainant company to his own personal use and profit and to the personal use and profit of the said Hostutler and Weissman, and against the interests of complainant company. That the exact time of such withdrawal and the exact amount so withdrawn and diverted as aforesaid are unknown to this complainant company, and the defendant refuses to disclose the same, but this complainant company is informed and believes and so avers that the aggregate of the moneys fraudulently diverted as aforesaid was upwards of $94,000.

"That the moneys so withdrawn from the treasury of complainant company were moneys paid to complainant company and intended for its use by subscribers to the capital stock of complainant company.

"That said withdrawal was without the knowledge or consent of the subscribers or shareholders of complainant company.

"That the withdrawal of said moneys was without any authority in law, and was not given even the color of authority by any corporate resolution or action.

"That the said defendant now pretends that the moneys so drawn out and diverted as aforesaid were the proceeds of the sale of the common stock of complainant company, and that the aforesaid resolutions of the incorporators' meeting and of the directors' meeting of complainant company relative to the Piggly-Wiggly agreement hereinbefore set forth gave the said defendant the right to withdraw said money from the treasury of complainant company and devote the same to his own personal use and to the personal use of his aforesaid associates.

"And this complainant denies that the aforesaid resolutions of the incorporators' meeting and of the directors' meeting of complainant company gave the said defendant the right to withdraw said money from the treasury of complainant company, and expressly charges that said withdrawal was unlawful and constituted, and was, a breach of trust.

"That neither said defendant nor his said associates, nor any of them, has paid back the moneys withdrawn from the treasury of complainant company as hereinbefore set forth, nor any part thereof.

"That the said defendant has refused to account for said moneys, though requested so to do by the complainant company.

"That during all the time that the acts hereinbefore alleged took place neither the said defendant nor his said associates disclosed to the complainant company or to the subscribers of its capital stock or to its stockholders, or to any of them,

that the said defendant or his said associates, or any of them, claimed any right, title or interest in or to the common stock of complainant company, or to the proceeds from the sale thereof, or to any part of such proceeds, and did not disclose the resolution pretended to be adopted at the incorporators' meeting of March 4th, 1922, or the resolution pretended to be adopted at the directors' meeting of March 4th, 1922, hereinbefore referred to, and did not disclose that they, or any of them, claimed or expected any personal gain or profit for or by reason of the aforesaid assignment of the Piggly-Wiggly agreement to complainant company, or for or by reason of the contract entered into by the said defendant in the name of complainant company with Piggly-Wiggly corporation hereinbefore referred to, but concealed all these things from complainant company and its shareholders and subscribers to its capital stock.

"That the complainant company and its stockholders were not in possession of the facts concerning the fraudulent acts of the said defendant and his said associates hereinbefore alleged until after the defendant ceased to be a director and officer of complainant company as aforesaid, and shortly before the filing of this bill of complaint.

"That neither the said complainant company nor its stockholders have ever ratified or acquiesced in any of the aforesaid fraudulent acts of the defendant and his said associates."

The prayer is for an accounting by Bartlett and a decree for repayment.

An answer was filed. A motion made to strike certain portions of the answer was followed by a motion to dismiss the bill for lack of equity. The motion to strike out answer has not been pressed, the part which is asked to be stricken being that which raises the point argued on the other motion.

The argument of counsel is based upon the claim that this common stock was the property of Bartlett and his associates, and that the complainant company could not be heard to complain as to their conduct, that if there was any cause of action, in any one, it was not in the company, but in each

or such individual as purchased the stock under fraudulent representations or conditions.

For the determination of this motion it is unnecessary to decide that question.

It is unnecessary to cite authorities that on a motion to strike the bill the complainant is entitled (saving laches or acquiescence) to have his account given in the bill treated as strictly true. *Bigelow* v. *Old Dominion Copper, &c., Co., 74 N. J. Eq. 492.*

There is no allegation in the bill that the stock (in question) was ever issued to Bartlett or his associates. In fact this is *negatived* by the averment: "All of which" (eight thousand eight hundred shares of common stock) "were issued to the holders as original subscribers direct from the company."

The only allegations in the bill which could be deemed an averment that this common stock was the property of Bartlett and his associates, is the allegation and recital of a resolution at the stockholders' meeting recommending, and the resolution in the directors' meeting accepting, the offer of Baretlett and his associates, and agreeing to purchase the agreement, as consideration of the issuance of the said fifteen thousand shares of the common stock, and authorizing the issuance of the same and the making of agreement.

The agreement making this sale was upon the expressed consideration of "one dollar and other valuable consideration," and was according to the bill abrogated ten days later by the defendant and his associates as directors and officers of the company.

The only other material reference to the ownership of this stock is the allegation: "That by reason of the aforesaid acts and representations of the said defendant and his associates the said defendant became and was estopped from claiming or pretending any right or title to the common stock of complainant company, or to the proceeds from its sale."

This issue as raised and argued on this motion may or may not be the determining point at a final hearing in this

case, and it might be said that the court would be justified in considering all other points waived under such circumstances. but although the argument was practically limited to this mooted question, the motion was not so limited.

The question remains. can a corporation demand of a defendant, who is a director, president and treasurer of this company, an accounting of moneys withdrawn by him from the treasury of the company with or without formal authorization so to do by the directors, which money was paid into the treasury by persons subscribing to the company for common stock of the company, and receiving therefor from the company its common stock.

These are allegations in the bill, and for this purpose must be accepted as true.

The final hearing is the time when it will be determined whether the money alleged to be withdrawn was properly withdrawn, or whether it was the property of the complainant or not, but the allegation is made that it is the proceeds of a contract made between the subscribers and the company and by reason thereof was paid into the treasury of the company, and that allegation with others, heretofore quoted, is sufficient to compel the court to refuse to dismiss the bill.

An order will be advised in accordance with these views.